IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AARON CHRISTIAN JACOBSON,<br>  *Plaintiff*,<br>V.<br><br>CITY OF NORTH RICHLAND HILLS;<br>NORTH RICHLAND HILLS POLICE DEPARTMENT;<br>THOMAS R. SHOCKLEY, POLICE CHIEF OF THE<br>NORTH RICHLAND HILLS POLICE DEPARTMENT;<br>SHAYNE KOTARA; AND F. M. CARMICHAEL,<br><br>  *Defendants*. | §<br>§<br>§<br>§<br>§<br>§   CIVIL ACTION NO. 4:04-CV-421-Y<br>§<br>§<br>§<br>§<br>§ |

**ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the motion for summary judgment of defendants Thomas R. Shockley, Shayne Kotara, and F. M. Carmichael (collectively, "the officers") [doc. # 20], filed October 25, 2005. After consideration of the motion, the response, and the reply, the Court partially GRANTS the motion and DENIES the remaining portions of the motion.

I. BACKGROUND

The case arises from an arrest where the facts are hotly contested.[1] Early in the morning of January 31, 2003, Kotara, a police officer for the North Richland Hills police department, received a call while he was on patrol that a citizen had made a 9-1-1 call to report that there was a possible drunk driver heading south on Precinct Line Road. Kotara was told the possible drunk driver was in a black Chevy Silverado truck, with a license of 7VY P25. The 9-1-1 caller told

---

[1] For the reasons stated in the officers' reply, plaintiff Aaron Christian Jacobson's objections to their summary-judgment evidence are overruled.

the dispatcher that the driver of the Chevy truck was weaving, varying his speed, and had earlier opened his door to vomit on the street. The caller was following the suspect in a green truck.

Kotara saw a black truck driving south on Precinct Line Road with a green truck following at a distance. Kotara passed the green truck, and got behind the black truck where he noticed that the black truck had a license of 7VY P25. (Defs.' App. at 2.) The black truck turned left into the driveway of a house on Precinct Line Road.[2] Kotara pulled into the driveway behind the black truck. (Defs.' App. at 2.) He did not see the driver driving in an erratic manner. (Pl.'s App. at 18-19, 28.) Jacobson, the driver of the black truck, got out. Kotara noticed that Jacobson was unsteady as he walked, smelled of alcohol, had bloodshot eyes, and had vomit on the side of his face. (Defs.' App. at 3.) The video taken by the camera in Kotara's car does not show that Jacobson was unsteady when he walked, but shows him readjusting his stance frequently. Kotara commented to Jacobson that he had vomit on his face. Although Kotara repeatedly told Jacobson to keep his hands out of his pockets, Jacobson habitually put his hands back in his pants pockets. (Defs.' App. at 127.)

Carmichael, also an officer with the North Richland Hills Police, arrived at this point. Jacobson asserted that he only wanted to go home and refused to take field-sobriety tests. Based on Jacobson's apparent intoxication and the facts given from the 9-1-1 caller, Kotara decided to arrest Jacobson for driving while intoxicated. (Defs.' App. at 4, 8.) Kotara told Jacobson he was under arrest for driving while intoxicated and repeatedly asked him to turn around and face Carmichael, but Jacobson refused and became increasingly agitated. When Kotara grabbed Jacobson's left arm to turn him around to handcuff him, Jacobson pivoted toward his left arm

---

[2] Jacobson lived at the house.

2

and tried to get his left arm free with his right hand.³ Carmichael tackled Jacobson from behind and took him to the ground. (Defs.' App. at 4, 127.) Jacobson was not hurt at this point. (Defs.' App. at 4, 9.) While he was on the ground, Jacobson laid on his arms so the officers at first could not handcuff him. Once they did get the handcuffs on Jacobson, they stood him up and made him stand, lean on the trunk of Kotara's car, and spread his legs apart. (Defs.' App. at 4, 9.)

While they attempted to search him for weapons and contraband before putting him in the back of Kotara's car, Jacobson repeatedly put his legs back together and tried to raise himself off the trunk. Finally, Carmichael, to separate Jacobson's legs, lifted Jacobson's left ankle and pulled it up toward his back. Jacobson again lifted his torso off the trunk, lost his balance, and all three fell to the ground. (Defs.' App. at 5, 9.) Jacobson alleges that Carmichael slammed Jacobson's head into the pavement for 15 to 20 seconds, which Carmichael and Kotara deny. (Defs.' App. at 5, 10.) Jacobson was taken to the hospital. He had a ruptured right eardrum and received stitches over his right eye. (Pl.'s App. at 116.) After a trial, a jury acquitted Jacobson of driving while intoxicated.

Jacobson filed suit in this Court against the City of North Richland Hills, the North Richland Hills Police Department, Thomas R. Shockley,⁴ Kotara, and Carmichael. Jacobson raised the following federal claims against Carmichael and Kotara: excessive force, arrest without a warrant or probable cause, cruel and unusual punishment, equal-protection violation, unlawful interrogation, unlawful entry and search of Jacobson's house and truck, and failure to protect Jacobson. He raised the following state claims against them: malicious prosecution,

---

³Jacobson asserts that he was merely turning toward his left arm because Kotara's grip hurt him. (Pl.'s App. at 2.)

⁴Shockley is the chief of the North Richland Hills Police Department.

3

trespass, battery, false arrest, intentional infliction of emotional distress, and gross negligence. Against Shockley, Jacobson raised a federal claim of supervisory liability and a state claim of negligent entrustment.[5] Shockley, Kotara, and Carmichael moved for judgment as a matter of law on the basis of qualified and official immunity.

## II. STANDARDS OF REVIEW

### A. SUMMARY JUDGMENT

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however. Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim. *See id.* at 323-25.

When the moving party has carried its summary judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). This burden is not satisfied with some abstract or theoretical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by

---

[5]Because the instant summary-judgment motion relates only to the officers, Jacobson's claims against the city and the police department will not be discussed.

4

only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. FED. R. CIV. P. 56(c); *see Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

B. QUALIFIED IMMUNITY

To the extent Jacobson seeks money damages directly from the officers for their actions taken under color of state law, the officers may invoke their right to qualified immunity. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991). Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When this Court is called upon to confer qualified immunity upon a government official accused of violating a federal constitutional or statutory right, the Fifth Circuit requires the Court

first to employ a three-part inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001). The burden is on the plaintiff to show the inapplicability of the qualified-immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). First, the Court must determine whether the plaintiff has actually alleged the violation of a federal constitutional or statutory right. *See id.* If the Court determines that he has, the Court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendants' situation would have understood that his conduct violated that right. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).[6] Finally, the court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that [is alleged to have] violated the clearly established right." *Conroe Creosoting*, 249 F.3d at 340. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v . Briggs*, 475 U.S. 335, 341 (1986).

## C. OFFICIAL IMMUNITY

Regarding state-law claims, government employees are entitled to official immunity from suit arising from the performance of their discretionary duties performed in good faith as long as they were acting within the scope of their authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653-58 (Tex. 1997). Official immunity is an affirmative defense; thus, the officers

---

[6]This second part of the test is often referred to as "objective reasonableness." Thus, "whether an official protected by qualified immunity may be held personally liable turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639(1987).

must conclusively prove each element of the defense to be entitled to summary judgment. *See Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000).

A discretionary function—as distinguished from a ministerial duty, which requires rote obedience to orders or performance of a function to which the actor has no choice—involves a personal deliberation, decision, and judgment. *See Chambers*, 883 S.W.2d at 654. An officer acts in good faith if a reasonably prudent officer, under the same circumstances, could have believed that his actions were correct. *See id.* at 656. An officer acts within the scope of his authority when he discharges the duties generally assigned to him. *See id.* at 658.

To obtain official immunity on summary judgment, an official must prove that a reasonably prudent official might have believed that his action was appropriate under the circumstances. *See id.* Even if an official's actions were taken negligently, that would not be sufficient to defeat a showing of good faith. *Se id.* at 655. The test for good faith is objective and is substantially derived from the test for objective reasonableness in a qualified-immunity claim for federal constitutional violations. *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 413 (5th Cir. 2002).

### III. FEDERAL CLAIMS

#### A. UNLAWFUL ARREST

As an initial matter, the Court concludes that Jacobson has alleged the violation of a constitutional right by Kotara. Jacobson alleged that Kotara and Carmichael[7] arrested him

---

[7] Although Jacobson argues that both Kotara and Carmichael lacked probable cause to arrest him, the decision to arrest was made solely by Kotara. Carmichael was involved only to the extent he physically helped Kotara place Jacobson under arrest. Indeed, Jacobson's discussion of the lack of probable cause focuses solely on Kotara's actions and beliefs at the time of the arrest. (Pl.'s Resp. at 15-16.) Thus, Carmichael is entitled to summary judgment, and this Court need only consider the facts known to Kotara before the arrest. *See*

7

without probable cause. The next issue is whether the law was clearly established in January 2003 that it was unlawful for Kotara to arrest Jacobson based on the available information.

The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or by probable cause. U.S. CONST. AMEND. IV. It is undisputed that Kotara and Carmichael did not have a warrant for Jacobson's arrest. A warrantless arrest violates the constitution only if the officer lacks probable cause to believe the suspect has committed a crime. *See Bodzin v. City of Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). Probable cause exists "when the *totality* of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 165 (5th Cir. 1997) (emphasis added). A police officer is entitled to qualified immunity for an arrest if a reasonable person in his position could have believed he had probable cause to arrest. *See Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Even officers who reasonably, but mistakenly, conclude that probable cause exists are entitled to immunity. *See Anderson*, 483 U.S. at 641.

Kotara stated that his decision to arrest Jacobson was based on a number of factors, including the information from the 9-1-1 caller and the signs of intoxication Kotara noticed at the scene. (Defs.' App. at 3-5.) As the officers point out, Jacobson's claim hinges on his allegation that Kotara could not rely on the information provided by the 9-1-1 caller. However, because Kotara could rely on the totality of the information available to him, including information given by the 9-1-1 caller that he was later able to confirm through his own observations and with the 9-1-1 caller after the arrest, Kotara had probable cause to arrest

---

*Pineda v. City of Houston*, 124 F. Supp. 2d 1037, 1054-55 (S.D. Tex. 1999).

8

Jacobson for driving while intoxicated. *See, e.g., Mitchell v. State*, No. 10-05-050-CR, 2006 WL 133560, at *3-4 (Tex. App.—Waco Jan. 18, 2006, no pet. h.) (finding reasonable suspicion for DWI stop based on anonymous tip because tipster's information had indicia of reliability and was later corroborated by officers); *Sandoval v. State*, 35 S.W.3d 763, 768-69 (Tex. App.—El Paso 2000, pet. ref'd) (holding officer had probable cause to arrest defendant for DWI where he was later able to corroborate evidence that witness followed defendant home after car accident, saw that he was wobbly, called police, and, when officers arrived, advised them that defendant appeared intoxicated). Kotara and Carmichael are entitled to qualified immunity and, thus, summary judgment.

### B. EXCESSIVE FORCE

Jacobson argues that Kotara and Carmichael used excessive force when they arrested him. Again, the first consideration in determining whether Kotara and Carmichael are entitled to immunity for use of excessive force is whether Jacobson has demonstrated a violation of his constitutional right to be free of the use of excessive force by law-enforcement officers. Because Jacobson has, the next question is whether Kotara's and Carmichael's actions were objectively reasonable in light of established law in January 2003.

Claims of excessive force in the course of making an arrest are properly analyzed under the Fourth Amendment's objective-reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on a claim for use of excessive force under the Fourth Amendment, Jacobson must show that he (1) suffered some injury, (2) the injury resulted from force that was clearly excessive to the need, and (3) the excessive force was objectively unreasonable. *See Glenn*, 242 F.3d at 314. Reasonableness, which is determined under the totality of the

circumstances, must be judged objectively from the perspective of a reasonable officer on the scene. *See Graham*, 490 U.S. at 396.

Jacobson was not injured in the first take down; thus, his claim can relate only to the second fall. (Pl.'s App. at 2; Defs.' App. at 4-5, 9.) *See Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) (finding no claim for excessive force when there was no injury). Jacobson avers that during the second take down, Carmichael and Kotara shoved him to the ground and that Carmichael "smashed his head into the concrete vigorously with repeated blows from his elbow and forearm." (Pl.'s App. at 2.) Carmichael and Kotara deny Jacobson's allegations. They state that they used no more than minimal force to arrest Jacobson and that they believed that such force was reasonably necessary. (Defs.'s App. at 5, 10.) The videos are inconclusive regarding what occurred during the second take down. Any credibility determination made between Kotara's, Carmichael's, and Jacobson's version of events is inappropriate for summary judgment. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005). While the fact finder may ultimately conclude either that Carmichael's and Kotara's force was not excessive or that the force used was objectively reasonable, this decision should not be made at the summary-judgment stage and based on the state of the record before the Court. *See, e.g., id.*; *Ikerd*, 101 F.3d at 433-35.

### C. MISCELLANEOUS CONSTITUTIONAL ALLEGATIONS

Jacobson argues that Carmichael's and Kotara's actions amounted to cruel and unusual punishment. As Kotara and Carmichael point out, a pretrial detainee cannot raise a claim for cruel and unusual punishment under the Eighth Amendment. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).

Jacobson asserts that Kotara and Carmichael "deprived [Jacobson] of his right to equal protection" under 42 U.S.C. § 1981. (Pl.'s Comp. at 10.) But Jacobson does not raise any allegation of any type of discrimination, i.e., that he was treated differently than someone else similarly situated. Indeed, Jacobson does not dispute in his response that he has failed to allege a cause of action for an equal-protection violation.

Jacobson alleges that Carmichael and Kotara engaged in unlawful interrogation and an unlawful entry and search of his truck and home. Specifically, he argues that because Carmichael and Kotara did not have reasonable suspicion or probable cause to support his arrest, they could not question him[8] or search his truck and home. As discussed above, Kotara did have probable cause to arrest Jacobson. Thus, any interrogation and search were lawful.

### D. FAILURE TO PROTECT

Jacobson argues that Kotara and Carmichael unlawfully failed to protect him. Because Kotara and Carmichael are entitled to qualified immunity regarding Jacobson's claims for illegal arrest and search, equal protection, cruel and unusual punishment, and unlawful interrogation, it follows that there was no failure to protect regarding these claims.

However, because there are fact issues regarding whether Kotara and Carmichael used excessive force, there are also fact issues regarding whether they failed to protect Jacobson from such excessive force. An officer will be liable for failure to protect if the plaintiff establishes that the official acted with subjective deliberate indifference to his constitutional rights. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999). Deliberate indifference

---

[8] It is important to note that the tapes of the arrest show that many of Jacobson's statements were not the result of questioning, but were spontaneous.

11

occurs when the officer "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). In other words, deliberate indifference is the subjective intent to cause harm, and negligent conduct is not enough. *See id.* at 648. As discussed above, a fact issue exists on Kotara's and Carmichael's alleged use of excessive force. The same facts that give rise to a genuine issue of material fact as to excessive force give rise to a genuine issue of material fact as to their failure to protect.

E. SUPERVISORY LIABILITY

Jacobson argues that Shockley, as Carmichael's supervisor, is liable for supervisory liability. He bases his claim on the fact that Shockley knew about Carmichael's history of using excessive force and failed to adequately train or supervise Carmichael. Supervisory officials cannot be held liable under § 1983 for the actions of subordinates, such as Carmichael, on any theory of vicarious or respondeat-superior liability. Rather, Jacobson must show that Shockley's conduct denied Jacobson his constitutional rights. *See Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Regarding his failure-to-train-or-supervise claim, Jacobson must show that (1) Shockley failed to train or supervise Carmichael; (2) a causal link existed between the failure to train or supervise and the violation of Jacobson's rights; and (3) the failure to train or supervise amounted to deliberate indifference. *See id.* Deliberate indifference is a stringent standard of fault that requires proof that a municipal actor disregarded a known or obvious consequence of his action. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). To act with deliberate indifference, the official must be aware of facts that could lead to the inference that a substantial risk of serious harm exists and must actually draw the

12

inference. *See Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998). Actions that are inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). Thus, Jacobson must show a pattern of violations[9] in which the citizens were injured and that the inadequacy of the training is apparent and is likely to result in a constitutional violation. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998).

To defeat Shockley's assertions of qualified immunity, Jacobson points to the following incidents,[10] which he asserts show that Carmichael had a history of using excessive force:

1. In June 1999 while directing traffic around blocked road lanes, Carmichael threw his flashlight to the ground after a motorist disregarded his instructions to stop. (Defs.'s App. at 86.)

2. In January 2000, Carmichael used force during his DWI arrest of James Foust. While handcuffing Foust, Carmichael broke Foust's finger. When Foust later approached Carmichael at the jail, Carmichael knocked Foust to the ground and dragged him into a holding cell. (Pl.'s App. at 127; Defs.' App. at 55-57.)

3. In June 2003, Carmichael saw an aerosol gun on the front seat of Barret Green's car while Green was parked in front of a restaurant.[11] When Green swung the gun toward Carmichael, Carmichael drew his gun and pointed it at Green. (Pl.'s App. at 4; Defs.' App. at 17-18.)

The court concludes that there is no material issue on the record regarding whether Shockley was deliberately indifferent. Because this case fails on the deliberate-indifference

---

[9]Although it is not unheard of for a single incident of prior wrongdoing to demonstrate deliberate indifference, it is certainly the exception to the rule. *See Davis*, 406 F.3d at 385-86.

[10]Although Jacobson mentions other incidents in his immunity response, these are the only actions he mentions in his response and supports with citations to the summary-judgment record.

[11]It is unclear why Carmichael approached Green's car.

13

requirement, the other two elements of supervisory liability need not be examined. *See Davis*, 406 F.3d at 382.

First, the incident involving Green does not show deliberate indifference because Green was not injured and is not sufficiently similar to the Jacobson incident to show a pattern of similar violations. *See Davis*, 406 F.3d at 383. Further, Shockley was not aware of this incident (Defs.' App. at 15), and it occurred after Jacobson's arrest. *See id.* at 385 & n.48. Likewise, the flashlight incident is too dissimilar to the instant facts and did not involve injury to a citizen. Finally, the Foust arrest does not support a deliberate-indifference finding. The allegations were thoroughly investigated, and Carmichael was found to have used excessive force. It was recommended that Carmichael be given a three-day suspension without pay, ordered to undergo training and counseling, and monitored. (Defs.' App. at 93-94.) These recommendations were carried out. (Defs.' App. at 19, 95, 122-24; Pl.'s App. at 72.) Other than his conclusory allegation, Jacobson fails to show how these training measures were insufficient.[12]

## IV. STATE CLAIMS

Regarding Jacobson's state claims against the officers, this Court must determine if official immunity is appropriate. Jacobson does not dispute that the officers were government employees and that their actions were discretionary acts. But Jacobson asserts that because the officers' actions were not in good faith and outside the scope of their duties, they are not entitled to official immunity.

---

[12]Although there was a delay in Carmichael receiving the training, the course was infrequently offered. (Pl.'s App. at 86-87.)

Under Texas law, an official acts within the scope of his authority if he is discharging the duties assigned to him. *See Chambers*, 883 S.W.2d at 658. Regarding official immunity, an official does not step outside his authority by engaging in unauthorized or wrongful conduct. *See id.* There is no summary-judgment evidence that the officers' actions were outside their assigned duties, i.e., arresting a suspected drunk driver and supervising Kotara and Carmichael.

To controvert the officers' summary-judgment proof that they acted in good faith, Jacobson must show that no reasonably prudent officer in their position could have thought their conduct was justified. *Chambers*, 883 S.W.2d at 657. As discussed above, Kotara and Carmichael could have reasonably believed that their actions in detaining and arresting Jacobson were justified because they were supported by reasonable suspicion and probable cause. This defeats Jacobson's arguments that Kotara's and Carmichael's actions were not in good faith. Thus, Jacobson's malicious-prosecution, trespass, and false-arrest claims fail. *See, e.g., Hartman v. Moore*, No. 04-1495, 2006 WL 1082843, at *5 (U.S. Apr. 26, 2006).

Jacobson's negligent-entrustment claim also cannot survive Shockley's assertion of official immunity. As noted above in the discussion of supervisory liability, there is no evidence that Shockley acted with deliberate indifference. These same facts preclude a finding that Shockley did not act in good faith. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) (holding deliberate indifference requires a showing of more than inadvertence or good-faith error).

However, there are fact issues regarding Jacobson's claims for battery, intentional infliction of emotional distress, and gross negligence. As discussed above, the facts regarding Kotara's and Carmichael's use of force during second take down of Jacobson and their failure to protect Jacobson are disputed. If the facts are as Jacobson alleges, a reasonable fact finder could conclude that no reasonably prudent officer could have thought their conduct was justified. This

precludes a finding of official immunity as a matter of law regarding Jacobson's claims for battery, intentional infliction of emotional distress, and gross negligence.

## V. CONCLUSION

The officers are entitled to qualified and official immunity regarding Jacobson's claims for unlawful arrest, cruel and unusual punishment, equal protection violations, unlawful interrogation, unlawful search, supervisory liability, malicious prosecution, trespass, false arrest, and negligent entrustment. Fact issues regarding Kotara's and Carmichael's actions prevent this Court from concluding, as a matter of law, that they are entitled to official and qualified immunity regarding Jacobson's claims for failure to protect, excessive force, battery, intentional infliction of emotional distress, and gross negligence.

SIGNED May 15, 2006.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/ah